**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AUTO-OWNERS INSURANCE**
**COMPANY,**

              **Plaintiff,**

-vs-                                                                **Case No. 6:05-cv-334-Orl-31JGG**

**SOUTHEAST FLOATING DOCKS, INC.,**
**and ALAN L. SIMPSON,**

              **Defendants.**

## ORDER

This matter comes before the Court on the Motion for Judgment as a Matter of Law or, in the Alternative, For a New Trial (Doc. 189) and supporting memorandum (Doc. 190) filed by the Plaintiff, Auto-Owners Insurance Company ("Auto-Owners"), and the memorandum in opposition (Doc. 199) filed by the Defendants, Southeast Floating Docks, Inc. ("Southeast") and Alan L. Simpson ("Simpson"). In resolving the instant motion, the Court has also considered the supplemental memoranda filed by Auto-Owners (Doc. 202) and the Defendants (Doc. 203).

**I.   Background**

Southeast contracted to build a dock for Rivermar Contracting Company ("Rivermar"). Needing a surety, Southeast executed an indemnity agreement in favor of Auto-Owners. Auto-Owners, as surety, executed a performance bond on behalf of Southeast, as principal, and in favor of Rivermar, as obligee. A disagreement developed as to construction of the dock. Rivermar made a claim on the bond. Southeast sued Rivermar in state court.

Initially, Auto-Owners and Southeast cooperated in regard to the dispute with Rivermar. Around the end of 2004, Auto-Owners opted to deal with Rivermar on its own, rather than with Southeast, and some time thereafter settled with Rivermar for the penal sum of the bond – $956,987. The settlement released only Auto-Owners, not Southeast, from liability to Rivermar.

Pursuant to the indemnity agreement, Auto-Owners sought reimbursement from Southeast for the $956,987. Southeast refused to pay, arguing *inter alia* that its obligation was barred by bad faith on Auto-Owners' part in settling with Rivermar. Auto-Owners filed suit to collect the $956,987. On June 1, 2006, after a three-day trial, the jury found that Auto-Owners had not made the payment to Rivermar in good faith, thereby barring Auto-Owners from recovering under the indemnity agreement. Judgment was entered on June 2, 2006. (Doc. 184). On June 16, 2006, Auto-Owners filed the instant motion for judgment as a matter of law or for a new trial, on the grounds that the Defendants failed to produce sufficient evidence that it acted in bad faith.[1]

## II.     Legal Standards

### A.     Motion for Judgment as a Matter of Law

In considering a defendant's renewed motion for judgment as a matter of law, the court should review all of the evidence in the record; in doing so, however, the court is required to draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 205 (2000). "Thus, although the court should

---

[1] Auto-Owners also moved under Rule 59 for a new trial on the grounds that the jury instructions were erroneous. (Doc. 189 at 2). At the hearing, Auto-Owners acknowledged that it had waived its ability to move for a new trial on that basis by failing to object to the jury instructions.

review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. Even though the trial judge might have reached a different conclusion had he been the trier of fact, he is not free to reweigh the evidence or to re-evaluate credibility of witnesses. *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995).

### B. Motion for a New Trial

A renewed motion for judgment as a matter of law may be joined, in the alternative, with a motion for a new trial under Rule 59. Fed.R.Civ.P. 50(b). These motions "have wholly distinct functions and entirely different standards govern their allowance." 9A Wright & Miller, *Federal Practice and Procedure* § 2531.

> If a motion for new trial is granted, the case is tried again. If the motion for judgment as a matter of law is granted, the case is at an end. Because of the finality that the latter motion has, it is natural that it should be measured by a far more rigorous standard. On a motion for a new trial, the court has a wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of whether there is sufficient evidence to raise a jury issue. . . .
>
> The failure to seek a judgment as a matter of law at the close of evidence does not procedurally bar a motion for a new trial, as it does a renewed motion for judgment as a matter of law.

*Id. See also Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973)[2] (holding that plaintiff's failure to make Rule 50 motion did not bar him from seeking new trial under Rule 59). The decision as to whether to grant a new trial is committed to the discretion of the trial judge. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

Rule 59(a)(1), Fed.R.Civ.P., provides that after a jury trial a new trial may be granted to all or any of the parties on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Any such motion must be filed no later than 10 days after entry of the judgment. Fed.R.Civ.P. 59(b). In addition, the court may order a new trial on its own initiative, so long as it does so not later than 10 days after the entry of judgment. Fed.R.Civ.P. 59(d). If a timely Rule 59 motion has been filed, the court may grant it for a reason not stated in the motion. Fed.R.Civ.P. 59(d).

The trial court may grant a motion for a new trial under Rule 59 if it believes the verdict rendered by the jury was contrary to the great – and not merely the greater – weight of the evidence. *Williams* at 973. To make this determination, the trial judge must independently weigh the evidence favoring the jury verdict against the evidence in favor of the moving party. *Id.* (citing *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). A trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Williams v. City of Valdosta*, 689 F.2d 964, 973 n.7 (11th Cir. 1982). In cases involving simple issues, highly disputed facts, and an absence of "pernicious occurrences", the Court has less freedom to disturb a jury verdict than it does in cases involving complex issues, facts not highly disputed, and events arguably marred by error. *Id.* (citing, among others, *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir. 1980)). An order granting a new trial is ordinarily not appealable, as it is not a "final decision" within the meaning of 28 U.S.C. § 1291. *Hardin v. Hayes*, 52 F.3d 934, 937 n.2 (11th Cir. 1995).

**III.    Analysis**

    **A.    Renewal of Rule 50 motion**

Before determining whether Auto-Owners is entitled to judgment as a matter of law, the Court must consider whether Auto-Owners' Rule 50 motion is procedurally barred. Auto-Owners moved for judgment as a matter of law against Southeast at the conclusion of the Defendants' case, arguing that Southeast had failed to produce any evidence from which a reasonable jury could find that Auto-Owners had settled with Rivermar in bad faith. (Doc. 187 at 531-32). The Court denied the motion. (Doc. 187 at 535). Auto-Owners then put on two rebuttal witnesses – James Smith and Kenneth Bloom. (Doc. 187 at 538-615). Auto-Owners did not renew its Rule 50 motion before the case went to the jury. The Defendants argue that Auto-Owners' failure to renew its motion after the rebuttal witnesses precludes this Court from granting judgment as a matter of law.

    Rule 50(a) governs a party's initial motion for judgment as a matter of law. It provides that such motions may be made "at any time before submission of the case to the jury." Fed.R.Civ.P. 50(a). Post-verdict renewal of such motions is governed by Rule 50(b), which provides, in pertinent part, that

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment.

Fed.R.Civ.P. 50(b). Thus, Rule 50 provides that a motion for judgment as a matter of law may be made at any time before the case is submitted to the jury, but to be subject to post-verdict renewal, such a motion must be made "at the close of all the evidence."[3]

The purpose of the requirement that the initial Rule 50 motion be made before the case goes to the jury "is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment." Fed.R.Civ.P. 50(a)(2) advisory committee notes (1991 amendment). Some courts are willing to overlook noncompliance with Rule 50's timing requirement so long as the purpose behind the rule is satisfied. *See, e.g.*, *Riverview Investments, Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 477 (6th Cir. 1990) (affirming grant of Rule 50 motion that was made prior to rebuttal testimony where trial court had indicated renewal of motion for directed verdict was not necessary to preserve right to move for j.n.o.v.[4] and where rebuttal testimony was

---

[3] Effective December 1, 2006, absent Congressional action, Rule 50(b) will be amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence. Fed.R.Civ.P. 50 advisory committee notes (2006 amendment). According to the advisory committee notes,

> This change responds to many decisions that have begun to move away from requiring a motion for judgment as a matter of law at the literal close of all the evidence. Although the requirement has been clearly established for several decades, lawyers continue to overlook it. The courts are slowly working away from the formal requirement. The amendment establishes the functional approach that courts have been unable to reach under the present rule and makes practice more consistent and predictable.

*Id.*

[4] Prior to 1991, Rule 50 distinguished between motions made prior to jury deliberations and those made afterward, with the former referred to as motions for a "directed verdict" and the latter referred to as motions for "judgment notwithstanding the verdict" or "j.n.o.v." The 1991 amendments to Rule 50 eliminated the distinction, and all such motions are now referred to as motions for judgment as a matter of law. Fed.R.Civ.P. 50(a) advisory committee notes (1991 amendment).

brief and inconsequential) *and see Laborers' Pension Fund v. A. & C Environmental, Inc.*, 301 F.3d 768 (7th Cir. 2002) (affirming post-trial grant of Rule 50 motion made prior to "brief rebuttal evidence"). The United States Court of Appeals for the Eleventh Circuit, however, takes a more rigid stance.

In *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983), *superceded by statute on other grounds*, Amoco moved for a directed verdict at the conclusion of the plaintiff's case but did not renew the motion at the conclusion of its own case. *Id.* at 1437. On appeal, Amoco argued that although it had not presented its motion at the close of all the evidence, it should not be prevented from arguing for a j.n.o.v. because it had presented only a single witness, whose testimony comprised only nine pages of transcript. *Id.* The court refused to overlook the failure, stating that Rule 50(b) "clearly requires a movant to file a directed verdict motion at the end of all the evidence in order to challenge the sufficiency of the evidence on appeal." *Id.* at 1438. The court also explained that "[t]he length of a movant's evidentiary presentation or demonstration, after the fact, that compliance would probably have been futile does not satisfy the rule's requirement." *Id.* at 1438.

A case from the former Fifth Circuit lays out some of the justifications behind the harsh requirements of Rule 50:

> The reasons behind the rule are sound. For example, a litigant may not gamble on a jury's verdict and then later question the sufficiency of the evidence on appeal. Similarly, the litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view.

*Little v. Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970).

The Eleventh Circuit has demonstrated a willingness to overlook some technical deficiencies in regard to the content of a Rule 50(b) motion. For example, in *Splitt v. Deltona Corp.*, 662 F.2d 1142 (5th Cir. 1981)(Unit B),[5] the court upheld a j.n.o.v. as to punitive damages despite the defendant's failure to move for a directed verdict on that issue. The defendant *had* moved for a directed verdict at the close of all the evidence as to a separate fraud issue, and the plaintiff knew the defendant had argued strenuously against a jury instruction that could result in an award of punitive damages. *Id.* at 1144. Finding that all parties had notice of the basis for the defendant's concern, and that the purpose of Rule 50 had been served, the Eleventh Circuit concluded that the defendant's timely but off-topic motion for a directed verdict was sufficient to preserve its right to move for a j.n.o.v. on the issue of punitive damages. *Id.* at 1144-45.

In regard to the timing of a Rule 50 motion, however, the Eleventh Circuit has continued to require strict adherence to the letter of the rule. And it has rejected arguments to soften this requirement. In *Sims' Crane Service, Inc. v. Ideal Steel Products, Inc.*, 800 F.2d 1553, 1556 (11th Cir. 1986), the defendant did not make a Rule 50 motion before the jury began its deliberations. The trial judge instructed the jury that it could only reach a verdict in the plaintiff's favor if it found that the defendant had been grossly negligent. *Id.* at 1555. The jury returned a verdict for the plaintiff, but the foreman stated that the jury had not found gross negligence on the defendant's part. *Id.* The court then granted the defendant's motion for a judgment notwithstanding the verdict. *Id.*

---

[5]In *Stein v. Reynolds Securities, Inc.*, 667 F.3d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

On appeal, the defendant argued that a motion for a directed verdict would have been "a hollow technicality of form over substance" because the trial judge had informed the parties, at the close of the plaintiff's evidence, that the issue of gross negligence had to go to the jury, and because the Eleventh Circuit had already decided, on an earlier appeal in the same case, that a directed verdict would be improper on the evidence then before the trial court. *Id.* at 1557. The appellate court responded that, although both of those arguments were persuasive to some extent, "counsel sometimes must take certain required, albeit formalistic, steps to preserve the rights of their client and to perfect the record for post-verdict proceedings." *Id.*

> Objections, proffers, and motions are frequently required in trials even when it may seem certain to the pertinent lawyer that the trial judge's view is that such efforts ought not to prevail. Of course, almost nothing is really certain in litigation; "[i]ndeed, it is always probable that something improbable will happen." *Warren v. Purtell*, 63 Ga. 428, 430 (1879) (Bleckley, J.). Thus it is hard to know when some act would have been truly useless. In any event, orderly and definite procedural steps are necessary to sharpen the issues before the court and to avoid misunderstanding.

*Id.* The Eleventh Circuit recently reaffirmed the holding in *Coker* that "[t]he length of a movant's evidentiary presentation or demonstration, after the fact, that compliance probably would have been futile does not satisfy the rule's requirement." *SEB S.A. v. Sunbeam Corp.*, 148 Fed.Appx. 774, 779 n.19 (11th Cir. 2005).

Thus, although some circuits seem to have downplayed Rule 50's "close of all the evidence" requirement, and although the requirement itself will soon be eliminated from the Federal Rules, the Court finds that – for the time being, at least – a plaintiff in this circuit cannot make a post-verdict Rule 50 motion unless it has made or renewed such a motion at the close of all the evidence. In this case, Auto-Owners put on two witnesses after making its Rule 50 motion and

did not renew the motion prior to the case going to the jury. Auto-Owners describes the two witnesses as a "short rebuttal"[6] and argues that, because Southeast did not introduce rebuttal testimony to cure the alleged defects it had raised in its Rule 50 motion, there was no need to renew the motion before the jury began deliberating. (Doc. 202 at 9). In light of the binding precedent cited above, however, neither the length of the testimony nor the fact that all parties were aware of the basis of Auto-Owners' motion can overcome the failure to make it at the conclusion of all the evidence. This Court therefore cannot grant Auto-Owners' Rule 50 motion.

      **B.**      **Rule 59 motion**

As Southeast rightly points out (Doc. 199 at 2), the overarching issue in this case was whether Auto-Owners' settlement with Rivermar was in good faith. The Court instructed the jury that, under the terms of the indemnity agreement, the Defendants were liable to Auto-Owners "for the full amount of any and all money paid *in good faith* by the surety ... in settlement or compromise of any claims, suit or judgment under the bonds under the belief that it was liable, whether liable or not, as well as any and all disbursements on account of costs, attorneys' fees and expenses, which may have been made under the belief that such were necessary, whether necessary or not." (Doc. 178 at 8) (emphasis added). The first line on the verdict form inquired whether the jury found, by a preponderance of the evidence, that Auto-Owners settled the claim of Rivermar Contracting Company in good faith. (Doc. 179 at 1). In response, the jury marked "No". (Doc. 179 at 1).

---

[6]The testimony of the first rebuttal witness, James Smith, comprises approximately 53 pages of transcript. (Doc. 187 at 538-591). The testimony of the second such witness, Kenneth Bloom, comprises approximately 23 pages. (Doc. 187 at 592-615).

Auto-Owners contends that the Defendants failed to produce sufficient evidence that it did not act in good faith, thereby entitling it to a new trial. (Doc. 190 at 18-19.) Although the grounds for this motion substantially resemble the grounds advanced by Auto-Owners in support of its motion for judgment as a matter of law, the failure to renew the latter at the close of the evidence does not bar the former. *Urti*, 479 F.2d at 769. After a thorough review of the transcript and the Defendants' responsive memoranda, the Court agrees that the jury's conclusion on this issue was against the great weight of the evidence.

With respect to the issue of good faith, the jury was instructed that Auto-Owners had a duty "to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." (Doc. 178 at 8). Moreover, Auto-Owners' duty of good faith and obligation to act with due regard for the interests of Southeast and Simpson extended to the investigation of the claim, the decision to defend or settle the claim, and the decision as to the amount for which to settle. (Doc. 178 at 8). The Court also instructed the jury that the question of bad faith "also involves analyzing whether the surety's conduct was reasonable under the circumstances, because unreasonable conduct can be evidence of improper motive." (Doc. 17 at 8).

Southeast's theory of the case is as follows: From the start in 2001, Auto-Owners failed to properly investigate Rivermar's bond claim. In late 2004, Thomas Froman ("Froman"), an assistant vice president in Auto-Owners' legal department, received a phone call from Fred Pinckney ("Pinckney"), general counsel for Rivermar's parent company. Pinckney alerted Froman to serious problems with the way Rivermar's claim had been handled by Rosemary Hayes ("Hayes"), an attorney who was representing both Auto-Owners and Southeast. (Doc. 204 at 28).

According to Southeast's version of events, Froman (and, by extension, Auto-Owners) then panicked, realizing the company faced bad faith and malpractice liability, neither of which would be covered by the indemnity agreement. (Doc. 204 at 24). Auto-Owners opted to settle the bond claim but was, in effect, settling the bad faith and malpractice claims, and hoping to exploit the indemnity agreement to use Southeast's money to do so. (Doc. 204 at 24). To accomplish that settlement, Auto-Owners went through the motions of conducting a perfunctory "investigation" of the construction defects while concealing its settlement negotiations from Southeast. (Doc. 204 at 24).

The question then becomes whether Southeast met its burden with regard to its affirmative defense by producing sufficient evidence of bad faith – or, more precisely, evidence of improper motive or dishonest purpose that would constitute bad faith. *PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.*, 838 A.2d 135, 152-53 (Conn. 2004).

Southeast never presented any "smoking gun" evidence regarding any of the preceding allegations – such as, for example, an admission from an Auto-Owners employee that the company settled the bond claim solely or primarily to avoid liability on the bad faith claim, or a memo instructing an engineer to conduct a sham investigation of the alleged defects. Further, Southeast never produced any evidence that Auto-Owners' calculations of $2.2 million in exposure on the bond claim – $700,000 to repair the docks, plus $1.5 million in associated legal fees – was legally or factually erroneous or unreasonable. Thus, Southeast presented no evidence that the $957,000 settlement was unreasonably high when compared to Rivermar's bond claim, standing alone.

Rather, Southeast relied on evidence which, it contends, shows that Auto-Owners acted unreasonably in settling the bond claim, which in turn suggest that it had an improper motive in

doing so. There was plenty of evidence that Auto-Owners' handling of the bond claim prior to Pinckney's late 2004 phone call was less than diligent. However, as Southeast acknowledges, evidence of negligent claim handling practices is not enough, standing alone, to demonstrate bad faith. *PSE Consulting* at 153.

Southeast points to Auto-Owners' alleged secrecy – its refusal in the period just prior to the settlement to include Southeast in the negotiations or even inform it that such negotiations were even occurring. Southeast argues that the jury could reasonably infer, based on Auto-Owners' secrecy, that Auto-Owners must have had something to hide. (Doc. 199 at 11-12). But the issue is not simply how Auto-Owners acted, but whether it acted reasonably in light of all the circumstances. (Doc. 178 at 8). Under normal circumstances, a surety's failure to keep its principal informed of settlement negotiations might be unusual or unreasonable. But this was not a normal case. The indemnity agreement gave Auto-Owners the right to settle the bond claim as it saw fit. (Doc. 1 at 10). When Southeast declined to post collateral, Auto-Owners was under no particular obligation to keep Southeast up to speed regarding settlement. And once the bad blood developed between Auto-Owners and Hayes, keeping her (and Southeast) out of the loop was not unreasonable, particularly given that Auto-Owners had no obligation to do otherwise. The same holds true for Auto-Owners' failure to include the claims against Southeast in the settlement with Rivermar.

In addition, Southeast's argument that Auto-Owners was in part settling a malpractice claim does not bear serious scrutiny. Despite repeated questioning at the post-trial hearing, counsel for Southeast was unable to come up with a plausible explanation as to how the settlement could have been, at least in part, a settlement having to do with Hayes' alleged malpractice.

Regardless of what Hayes may have done or failed to do during her legal representation of both Auto-Owners and Southeast, there is simply no legal basis for *Rivermar* to assert a malpractice claim against Auto-Owners, and therefore no way that the $957,000 could have represented payment on such a claim.

## IV.   Conclusion

All things considered, the Court concludes that Southeast failed to produce any credible evidence contradicting Auto-Owners' evidence that it acted in good faith. The inferences that Southeast wants drawn from the evidence that was produced are simply not reasonable. As such, the Court concludes that the jury's conclusion that Auto-Owners acted in bad faith was contrary to the great weight of the evidence, and Auto-Owners is entitled to a new trial. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, For a New Trial (Doc. 189) is **GRANTED IN PART AND DENIED IN PART**. The motion for judgment as a matter of law is **DENIED.** The motion for a new trial is **GRANTED.** The Judgment (Doc. 184) entered on June 2, 2006 is **VACATED.** The Clerk is **DIRECTED** to reopen the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 11, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE